## Philadelphia Trust &c., Co. *versus* Guillou.

A testator died seised of a certain mill which he had for some time prior to his death leased to a firm whereof his son was a member. By his will, testator devised his whole estate to his said son and another, in trust "to let and manage the real estate, and to collect, recover and receive the rent and income thereof, or to allow my said son, at his option, to use and occupy the lands, messuages or tenements belonging to my said estate, from time to time during his natural life," and upon further trust, to pay the net income of said estate to his said son. Testator further provided as follows: "In no event shall the principal or income thereof be liable in any way or manner whatsoever, for any of the debts, liabilities or engagements of my said son, or to any attachment or execution or proceeding in the nature thereof." After testator's death, the same firm continued to occupy the mill, keeping an account of the rent in their books, in which the son, as executor, was named as landlord. Subsequently the firm became insolvent and made an assignment for the benefit of creditors, and the son withdrew from the office of trustee. In a contest between the remaining trustee and the assignee of the firm, for the proceeds of certain personal property in the mill belonging to the firm, which had been levied·upon by the said trustee for rent in arrear, and sold by agreement with the assignee, the court charged, in substance, that if the son has exercised his option and taken possession of the property, and was individually the landlord of the firm, the remaining trustee was not entitled to the fund in controversy. *Held*, that this was error; that the trust created by the will was an active trust intended to protect the estate against the son's creditors, and that even if the son had exercised his option to take possession of the property, it was the right and the duty of the remaining trustee to intervene at any time before the rent was actually paid, and collect the same for the benefit of the son, as against the son's creditors. *Held*, therefore, that said trustee had a right to distrain for the rent in arrear, and was entitled to the fund in controversy.

April 6th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and GREEN, JJ. STERRETT, J., absent.

ERROR to the Court of Common Pleas No. 1, of *Philadelphia county :* Of January Term 1882, No. 225.

Covenant, by the Philadelphia Trust, Safe Deposit and Insurance Company, trustees under the will of Franklin Fell, deceased, against Rene Guillou, assignee for the benefit of creditors of C. J. Fell and brother.

On the trial, before BIDDLE, J., the facts appeared to be as follows :—In March 1878, the Philadelphia Trust Co., trustees under the will of Franklin Fell, distrained on goods of C. J. Fell & Bro. in a store in Philadelphia and in the Faulkland Mills in New Castle county, Delaware, to recover certain rent alleged to be due for said two properties.

The right to said rents was also claimed by Rene Guillou, assignee for benefit of creditors of said firm of C. J. Fell & Co., whereupon it was agreed by writing under seal, between said trus-

tee and said assignee, that the distress should be withdrawn, that the said assignee for creditors should sell the goods and deposit the proceeds to await a determination of the question as to the respective rights of the parties to said rent.   The goods were accordingly sold, and this action was brought on the agreement, to determine the rights of the parties to the fund.

Franklin Fell was in his lifetime the owner of the said store and the Faulkland Mills, which he leased by parol to the firm of C. J. Fell & Bro., consisting of his son W. Jenks Fell, and one Taylor.   After Franklin Fell's death no change was made in the status of the tenancy.   During his life the firm of C. J. Fell & Bro. had an account in their books in the name of Franklin Fell, to which they credited the balance of rent due for the said properties, and upon his death they credited the rent to "W. J. Fell, executor" of Franklin Fell.

Franklin Fell, by his will, after bequeathing the sum of $100,000, to his son William Jenks Fell, absolutely, devised and bequeathed as follows :

"Third.   All the rest, residue and remainder of my estate whatsoever and wheresoever, real, personal and mixed, of which I may died seised or possessed, I give, devise and bequeath unto my said son William Jenks Fell, his heirs and assigns and the Fidelity Insurance Trust · and Safe Deposit Company, [changed, by a codicil, to the Philadelphia Trust, Safe Deposit and Insurance Company] their successors and assigns and the survivor of them absolutely, in trust nevertheless to and upon the following uses and none other, that is to say :   In trust to let and manage the real estate and to collect, recover and receive the rents and income thereof, or allow my said son William Jenks Fell at his option to use and occupy any lands, messuages or tenements belonging to my said estate from time to time during his natural life, the taxes, assessments and repairs thereof to be paid out of the income of my estate and I will and direct that no sale shall be made of any of the real or personal estate of which I may die possessed, or which may be thereafter acquired by my said trustees, without the written consent of my said son being first had thereto.   Also to invest my personal estate from time to time, as occasion may require, in real estate or such other securities or investments as my said son may designate and approve, and to collect or allow my said son to collect the interest and income of such investments, and after paying all taxes, assessments, repairs, insurances and all other necessary or attending expenses, to pay over the entire net proceeds thereof as well as the net proceeds, income, rents, issues and profits arising and accruing from all my estate real and personal, and investments of every kind whatsoever, unto my said son William Jenks Fell for and during all the term of his natural life,

as the same fall due and are collected, and in no event shall the principal or income thereof be liable in any way or manner whatsoever, for any of the debts, liabilities or engagements of my said son, or to any attachment or execution or proceeding in the nature thereof."

The testator also appointed his said son, William Jenks Fell, executor of his will, who, immediately on his father's death, in 1875, entered upon his duties as executor. The Philadelphia Trust Company took no active part in the management of the estate until February 1878, when the firm of C. J. Fell & Co. failed. Wm. J. Fell, thereupon (fearing that complication might arise by reason of his occupying the double position of trustee and cestui que trust) petitioned the Orphans' Court to be discharged as trustee under his father's will. This petition contained the statement that he had "never received any money or other assets belonging to the said trust estate as such trustee or acted in that capacity in any way." The court granted the petition and discharged him as trustee February 9th 1878, whereupon the Trust Company assumed active management of the trust, and, inter alia, made the distress for rent.

The Philadelphia Trust Company, plaintiff, contended that they were entitled as trustees to the rent of said premises after Franklin Fell's death, as to which William Jenks Fell was beneficiary under his father's will.

The defendant, assignee for creditors of C. J. Fell & Bro., contended that Wm. Jenks Fell had, upon his father's death, exercised the option given to him in his father's will to occupy and use the properties in question, and had leased them to said firm of C. J. Fell & Bro., and that being entitled to the rent in his individual capacity as landlord, and not as cestui que trust under the will, his title to said rents passed to the assignee under the assignment for the benefit of creditors.

William J. Fell testified on cross-examination: "From the time of my father's death the Trust Co. took no active part in the management of the estate, till the failure of the firm of C. J. Fell & Bro. I managed the estate, and the only person who had anything to do with it. Two months' rent was paid to me after my father's death. . . . . I received two months' rent of mill, Dec. 25th 1875, to Feb. 25th 1876. And two months' rent of store, Jan'y 1st 1876, to March 1st 1876."

Plaintiff requested the court to charge, inter alia: 4. "The occupation of the premises by C. J. Fell & Bro. was not such occupation as is meant by will." Refused. Exception.

The defendant presented, inter alia, the following points:—

9. If the jury find that William J. Fell, individually, was the landlord of the firm for the store and mill, then this action

cannot be maintained and the verdict must be for the defendant." Affirmed. Exception.

10. If the jury find that William J. Fell, individually, was the landlord for the store and mill, of the firm, and that the firm was insolvent at the time, then the distress for the rent due, made upon the firm assets, could not legally be made, and the verdict must be for the defendant. Affirmed. Exception.

The court charged the jury, inter alia, "if you believe that Mr. William Jenks Fell did exercise the option, and took this estate into his own hands, why, then, the trustee here would have no right to recover, because he himself had occupied it as he would have a right to do. . . . . If you believe that there was an entire change, and that Mr. William Jenks Fell, under this power in the will, went and took possession of that property as his own, then of course the trustee, having permitted him to do that, would have no right, as trustee, to come upon this fund. And that is the question for you to decide."

Verdict and judgment for defendant; the plaintiffs took this writ of error, assigning for error, inter alia, the answers to the above points.

*Rowland Evans* and *R. L. Ashhurst*, for the plaintiffs in error.—Under the trust in the will of Franklin Fell, whereby the income of the premises in question was directed to be paid to his son, Wm. Jenks Fell, free from liability to his debts or engagements, the assignee for creditors of the firm of which the cestui que trust was a member, can in no event be entitled to the rents, as against the trustee under the will. The right of the cestui que trust to "use and occupy" the premises, did not authorize him to lease, so that the rent, in the hands of the tenant, could be liable to his debts or engagements, as a member of the firm or otherwise.

*George Junkin*, for the defendant in error.—Wm. Jenks Fell occupied the premises under the option in his father's will; rented them to his firm; himself received two months' rent, not as trustee, but in his individual capacity, for he swore in his petition for discharge as trustee, that he had never received any money as trustee, or acted in that capacity. He, therefore, as a partner, could not distrain. The trustee could not distrain because they had never assumed to act as trustee, until Wm. J. Fell was discharged, which was after the failure of the firm. They had not rented the premises to the firm. Mr. Wm. Jenks Fell, having exercised his option to occupy the premises in his own right, free from the trust, and having leased them to his firm, neither he nor the trustee can now fall back on the terms

4 OUTERBRIDGE.—17

of the trust, in order to withdraw the arrears of rent from tne firm's creditors, for his private benefit as cestui que trust.

Chief Justice SHARSWOOD delivered the opinion of the court, May 8th 1882.

It is unnecessary to examine and discuss the assignments of error seriatim. One error we think runs through, and affects them all. The learned judge below erred in affirming the defendant's ninth point, viz: "If the jury find that William J. Fell, individually, was the landlord of the firm, for the store and mill, then this action cannot be sustained, and the verdict must be for the defendant." The whole case, it will be seen, was made to turn upon the question of fact whether William J. Fell received rent from the firm as an individual, or as a trustee. We think that this was an immaterial question.

The issue under the agreement of the parties, was simply whether the rent claimed was a part of the trust estate of Franklin Fell, and if so, the plaintiffs as substituted trustees under his will were clearly entitled to it. The mill and store in question were a part of that trust estate. By the will the property was devised, inter alia, to his son William, and the Fidelity Trust Co., "in trust to let and manage the real estate, and to collect, recover and receive the rents, and income thereof, or to allow my said son William Jenks Fell, at his option, to use and occupy any lands, messuages or tenements, belonging to my said estate, from time to time during his natural life, the taxes, assessments and repairs thereof to be paid out of the income of my estate." It then proceeds to declare that the net income shall be paid to his son William, and adds "in no event shall the principal or income thereof, be liable in any way or manner whatsoever for any of the debts liabilities, or engagements of my said son, or to any attachment or execution or proceeding in the nature thereof." It is too plain for argument that the main object of the testator in creating this trust was, to protect his estate or that part of it which he meant for the support of his son William, both principal and income, from his creditors. It was necessarily an active trust, and the clause permitting William at his option to occupy or use any part of it, did not prevent that result : Rife *v.* Geyer, 9 P. F. Smith 393. If William exercised this option it did not make him the owner of the property. He might occupy it himself or permit others to occupy. His receipt of the rent, would discharge the tenants. When he received the rent he could do what he pleased with it. He could then invest it in his own name—he could pay his debts with it—he could give it away. But until it was received by him it belonged to the trust. In renting it or permitting his firm to occupy it at a stipulated rent he was act-

[Sleeper v. Pennsylvania Railroad Co.]

ing but as the agent of the trustees. The permission and option of were of necessity revocable. He had no power except as trustee to make a lease or reserve rent to himself individually. If he could do so, the rent, as soon as it was due, could have been attached by his creditors. He might on the same principle, have appropriated the entire estate to himself, as an individual; and the whole income might have been swept from him by his creditors, and then he would by his own act have destroyed the trust created by the will. On the contrary, it is evident that though the trustees might under the will permit William at his option to receive the rents and income, the moment any of his creditors claimed to arrest them, before their actual receipt by him, it was their right and duty to intervene and protect the trust, and prevent it from going where the testator had prohibited it from going. The fact that William, when applying to be discharged as trustee, had declared under oath that he had never done any thing as trustee, upon which so much stress was laid by the learned judge in his instructions to the jury, was altogether insignificant. Whether he acted as trustee or cestui que trust under the option made no difference. It could not and did not change the active operative character of the trust. We have treated the case as if there was evidence of an actual occupancy by William, and of a renting by him to his firm. The fact was, it seems, that Franklin Fell, in his lifetime, rented the property to the firm of which his son was a member. An account in his name on the books of the firm, had been credited with the rent of the premises, and after his death an account was opened with " W. J. Fell, executor " in which the rent was credited. We have no doubt that the trustees had a right to distrain for the rent in arrear, and that upon the evidence the jury should have been directed to find a verdict for the plaintiffs.

Judgment reversed and venire facias de novo awarded.